J-S35008-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANTHONY YORGEY :
:
Appellant : No. 655 MDA 2021

Appeal from the Judgment of Sentence Entered April 30, 2021
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0001259-2020

BEFORE:   OLSON, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:        **FILED: MARCH 16, 2022**

Appellant, Anthony Yorgey, appeals from his judgment of sentence, entered on April 30, 2021, following his convictions for driving under the influence ("DUI"): controlled substance – impaired ability – 1st offense and DUI: controlled substance – metabolite – 1st offense.[1]  We affirm.

Appellant's charges arose from a criminal incident that occurred on October 2, 2019.  Trial Court Opinion, 7/22/21, at 1.  On December 7, 2020,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(d)(2), and 3802(d)(1)(iii), respectively.

We note that Appellant was also charged with DUI: controlled substance – schedule 1 – 1st offense and driving while operating privileges suspended or revoked.  75 Pa.C.S.A. §§ 2802(d)(1)(i), and 1543(a).  The Commonwealth *nolle prossed* the former and Appellant was found not guilty of the latter; thus, these charges are not the subject of this appeal.

Appellant filed an omnibus pre-trial motion seeking to suppress the results of a blood test taken after an allegedly unlawful arrest. *Id.* at 2. An extensive suppression hearing was held on March 18, 2021, after which the trial court denied Appellant's suppression motion. *Id.* On April 30, 2021, the trial court conducted a bench trial "during which the totality of the testimony and evidence presented at the suppression hearing was incorporated into the trial record by agreement of the parties."[2] *Id.*

At Appellant's March 2021 suppression hearing, Officer Michael Deitz of the Lancaster City Bureau of Police testified to his extensive training and experience in the investigation of matters that involve driving under the influence, including a specialized certification as a drug recognition expert. *Id.* at 6. The trial court summarized the following facts adduced at the suppression hearing and bench trial:

> The Commonwealth established that on October 2, 2019, Officer Deitz [ ] responded to a dispatch reporting an unconscious male inside of a blue Ford sport utility vehicle at 1:00 p.m. Upon arrival to the scene, Officer Deitz observed the vehicle lawfully parked at a "T-intersection" [ ] with the keys in the ignition[] and the vehicle running. [The vehicle was lawfully parked on the street at or near Appellant's residence.] Appellant was not awake [but was] seated

---

[2] The certified record includes the transcripts of testimony from the March 18, 2021 suppression hearing but omits the transcripts of testimony for the April 30, 2021 bench trial. It is the Appellant's duty to ensure the certified record contains all the facts and documents necessary for review. *Commonwealth v. Rush*, 959 A.2d 945, 949 (Pa. Super. 2008). The lack of trial transcript does not hamper our review, however, because the record makes clear that Appellant's conviction was based upon the evidence and testimony from the suppression hearing. *See* Trial Court Opinion, 7/22/21, at 2.

in the driver's seat of [the] vehicle. The door [to the] vehicle was locked. Officer Deitz then repeatedly banged on the door and window of the vehicle [ ] in an effort to wake Appellant. Eventually, [ ] Appellant was awoken by Officer Deitz. Officer Deitz then commanded Appellant to open the vehicle door and to turn the vehicle off. Officer Deitz continued to interact with the Appellant. Instead of following the officer's instructions, Appellant changed gears and placed the vehicle in drive. While the vehicle was in drive, Appellant attempted to remove the keys from the ignition. Officer Deitz instructed Appellant that "[he could not] pull the keys out of the ignition unless [he] put the car back into park." Officer Deitz observed Appellant's disorientation, pinpoint pupils, slow reaction time, slurred speech, and an overall inability to answer simple questions. Appellant also appeared to drool, [had] disheveled clothing, and was sweating profusely. During his interaction with Officer Deitz, Appellant claimed he had just returned [to Lancaster] from a twelve-hour shift at work as a landscaper in Reading, Pennsylvania. Upon request, Appellant was unable to verbally spell or write his name.

Appellant disclosed that he had been sleeping in his vehicle and denied any active use of prescription medication. In addition, there was a confusing conversation relative to Appellant having his cellular telephone stolen and that he was unable to recall his telephone number.

As noted, during his interactions with Appellant, Officer Deitz made several relevant observations, including Appellant's: constricted or "pinpoint" pupils; slow reaction times, even when responding to simple inquiries; sweating; disheveled and unkept clothing and appearance; slurred speech; and, that Appellant appeared to be drooling, although [] Appellant claimed this was a result of medical concerns. In addition, the officer observed that Appellant had trouble writing down certain identification information, although Appellant claimed this resulted from his poor handwriting. Officer Deitz also observed Appellant's drooping eyelids and shaking arms. Again, Appellant professed much of this was related to his ongoing anxiety concerns. It is specifically noted that Appellant bec[a]me more coherent as the interaction progressed. Officer Deitz then contacted emergency medical personnel, and they did arrive to ensure Appellant's well-being. During that interaction, it was observed that Appellant responded appropriately to the medical technicians' questions, that Appellant's vital signs were checked, that Appellant was found

to have an accelerated or elevated heart rate and normal blood pressure. Appellant denied any further medical treatment.

Thereafter, Officer Deitz requested, and the Appellant agreed, to the performance of a battery of standardized field sobriety testing [all of which indicated impairment.] … Accordingly, Appellant was arrested and transported to the Lancaster General Hospital where he consented to blood testing procedures after being provided with the relevant *O'Connell*[3] warnings. Such testing demonstrated the presence of multiple controlled substances including [various amounts of Nordiazepam, Clonazepam, seven-amino Clonazepam, Morphine, Fentanyl, and Norfentanyl, all of which are controlled substances that Appellant was not authorized to have in his system.]

*Id.* at 7-10 (record citations and footnotes omitted).

At the conclusion of the bench trial, the trial court found Appellant guilty of the aforementioned charges and proceeded directly to sentencing. *Id.* at 2. Appellant was sentenced to 72 hours to six months' incarceration, a $1,000.00 fine, and court costs. *Id.* at 3. Appellant did not file any post-sentence motions. This appeal followed.[4]

Appellant raises the following issue for our review:

I. Was the evidence presented by the Commonwealth insufficient to prove beyond a reasonable doubt that [Appellant] was guilty of [DUI pursuant to 75 Pa.C.S.A. §§ 3802(d)(2) or (d)(1)(iii)], where there was insufficient evidence that [Appellant] had driven, operated, or been in actual physical control of the movement of his vehicle?

Appellant's Brief at 9 (extraneous capitalization omitted).

---

[3] *Commonwealth v. O'Connell*, 555 A.2d 873 (Pa. 1989).

[4] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant's sole issue on appeal raises a sufficiency of the evidence challenge. "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Diamond**, 83 A.3d 119, 126 (Pa. 2013).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying [this] test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier[-]of[-]fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

**Commonwealth v. Pappas**, 845 A.2d 829, 835-836 (Pa. Super. 2004) (citation omitted), *appeal denied*, 862 A.2d 1254 (Pa. 2004); **see also Commonwealth v. Brown**, 52 A.3d 1139, 1163 (Pa. 2012) (stating that, in reviewing a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, **any** rational trier[-]of[-]fact could have found the essential elements of the crime beyond a reasonable doubt") (emphasis in original).

Appellant was convicted of two separate counts of DUI under Section 3802 of the Motor Vehicle Code, 75 Pa.C.S.A. § 3802. Section 3802, in relevant part, provides:

(d) Controlled substances. - - An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in the Act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act;

(ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

(iii) metabolite of a substance under subparagraph (i) or (ii).

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d).

Appellant does not dispute that there were "heavy drugs in his system[.]" Appellant's Brief at 35. Rather, Appellant specifically claims there was insufficient evidence that he was in actual physical control of his vehicle. *Id.* at 23. He contends that the Commonwealth failed to introduce evidence that, prior to Officer Deitz arrival, Appellant "did anything more than start his car and fall asleep inside of it." *Id.*. While Appellant admits that he was seated in the driver's seat with the keys in the ignition and the motor running, he cites *Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa. Super. 2003)

to support his argument that "something more than a defendant behind the wheel, with the motor running, is required to establish actual physical control of the vehicle; there must be evidence to support an inference indicating that the vehicle had been driven by the defendant while he was intoxicated." ***Id.*** at 30.

In finding that there was sufficient evidence to establish Appellant's guilt beyond a reasonable doubt, the trial court opined:

> Contrary to Appellant's assertion [that the evidence was insufficient,] the Commonwealth offered substantial direct and circumstantial evidence at trial as to Appellant being in actual physical control of his motor vehicle while under the influence of intoxicants to the extent that he was incapable of doing so safely. More specifically, based upon the totality of the evidence presented, the Commonwealth established that Appellant was in actual physical control of his vehicle at the time in question. At trial, the Commonwealth established that Appellant was found unconscious in the driver's seat of his vehicle, the vehicle's motor was running, and the keys were in the ignition. After being awoken by the officer, Appellant controlled the machinery of the vehicle by placing the vehicle into drive, which caused the vehicle to move forward.[5] Subsequent thereto, at the officer's direction,

---

[5] On appeal, Appellant contests the judge's finding that the vehicle moved forward based on lack of evidence. ***See*** Appellant's Brief at 20 (arguing that neither the body camera video recording nor the testimony evidenced the vehicle moving forward). During the suppression hearing, the trial court had extensive conversation with defense counsel regarding Appellant putting "the car in gear and the car mov[ing] forward," however counsel never objected to this finding. ***See*** N.T., Suppression Hearing, 3/18,21, at 55-56. Further, Appellant did not raise this issue in a post-sentence motion. Moreover, the video recording is not included within the certified record for our review. Therefore, because Appellant did not object to this finding at the suppression hearing, did not allude to this issue in a post-sentence motion or in his concise statement, and did not include all of the pertinent evidence presented to the trial court, we conclude that Appellant waived the issue for appeal. ***See***
*(Footnote Continued Next Page)*

Appellant placed the vehicle into park, turned off the ignition, and removed the vehicle's keys. Additionally, Appellant admitted to the officer that he had just returned from working a twelve-hour landscaping shift in Reading, Pennsylvania, and denied any recent use of controlled substances. Accordingly, such admissions are indicative of the fact that Appellant drove the vehicle from Reading to Lancaster and fail to suggest any use of controlled substances by Appellant promptly upon his arrival in Lancaster.

Trial Court Opinion, 7/22/21, at 10.

This Court recently reaffirmed the standard for finding a defendant "operated" or was "in physical control" of his vehicle. We explained:

[W]hile the Commonwealth was required to show that [an a]ppellant was operating or in actual physical control of a vehicle while under the influence[,] the prosecution did not need to present evidence that the vehicle was in motion. This Court has held that:

The term 'operate' requires evidence of actual physical control of **either the machinery of the motor vehicle or the management of the vehicle's movement**, but not evidence that the vehicle was in motion. Our precedent indicates that a combination of the following factors is required in determining whether a person had 'actual physical control' of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle. A determination of actual physical control of a vehicle is based upon the totality of the circumstances. The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle.

_____

***Commonwealth v. Rush***, 959 A.2d 945, 949 (Pa. Super. 2008) (explaining that it is the Appellant's duty to ensure the certified record contains all necessary documents and facts, and to prove that issues were preserved for review). Nevertheless, even if Appellant properly preserved this issue, we find Officer Deitz's testimony sufficient to establish movement of the vehicle. Additionally, even without this evidence, there was sufficient evidence to establish Appellant's control of the vehicle.

> *Commonwealth v. Toland*, 995 A.2d 1242, 1246 (Pa. Super. 2010), *quoting* *Commonwealth v. Brotherson*, 888 A.2d 901, 904-905 (Pa. Super. 2005). In *Toland*, this Court found there was sufficient evidence for the trial court to conclude that the appellant was in actual physical control of the movement of a vehicle when officers found the appellant parked outside a store and asleep in the driver's seat of a vehicle with the motor running and headlights illuminated. [*Id.*] at 1246.

*Commonwealth v. Dirosa*, 249 A.3d 586, 589-590 (Pa. Super. 2021) (emphasis added; some quotation and citation omitted). In *Dirosa*, police observed the appellant slumped over in the driver's seat of a running vehicle, the appellant was initially unresponsive, and once awakened, the appellant made several admissions which implicated his consumption of alcohol before driving. Thus, this Court found that there was sufficient evidence that the appellant operated or was in actual physical control of his vehicle while under the influence because "it was reasonable for the trial court to infer that [the a]ppellant was intoxicated when he drove his vehicle and parked" it where officers found him. *Id.* at 590.

Similarly, in the case *sub judice*, sufficient evidence supports the trial court's determination that Appellant was in actual physical control of his vehicle while intoxicated. Appellant was found by Officer Deitz at 1:00 p.m. in a state of unconsciousness in the driver's seat of his vehicle with the keys in the ignition and the vehicle running. *See* N.T., Suppression Hearing, 3/18/21, at 17-20; *id.* at 20 (Officer Deitz observing that the vehicle was running because he could "see exhaust, the lights, and [he could] hear it."). Appellant required substantial rousing to awaken, exhibited multiple

symptoms of impairment, failed numerous field sobriety tests, and made several statements indicating that he just returned from Reading, Pennsylvania. It was reasonable for the trial court to infer that Appellant drove to the location while intoxicated, especially in light of the fact that, as Appellant notes, no drugs were found in the vehicle. **See** Appellant's Brief at 35. Thus, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, sufficient evidence supported Appellant's DUI convictions.

We reject Appellant's contention that his conviction hinged on his operating the gear shift to place the car in drive and back into park. Rather, how he was situated – in the driver's seat with the keys in the ignition and car turned on – placed him in control of "the machinery of the motor vehicle or the management of the vehicle's movement[.]" **Toland**, **supra**. Similarly, to the extent that Appellant suggests that his own intoxication renders his statements incredible as shown through the bodycam video recording, it seems illogical to allow an individual to rely on his level of intoxication to relieve him of the consequences of his actions. Further, it is not the function of this Court to substitute its credibility determinations over that of the trial court. **Pappas**, **supra**. Accordingly, Appellant's claim is unavailing.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/16/2022